UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

WINTERS CLEANING SERVICES, LLC,

Debtor.
_______________________________________/

Case No. 26-50838-mlo
Chapter 11
Hon. Maria L. Oxholm

**COVER SHEET FOR MOTION TO USE CASH COLLATERAL OR TO OBTAIN CREDIT (FIRST DAY MOTION)**

The debtor has filed a motion to use cash collateral or to obtain postpetition financing, which is attached to this Cover Sheet. In accordance with LBR 4001-2(b) (E.D.M.), the debtor has identified below, by page and paragraph number, the location in the proposed order accompanying the motion of each of the following provisions:

| Provision | Contained in Proposed Order | Location in Proposed Order |
|---|---|---|
| (1) Provisions that grant liens on the estate's claims and causes of action arising under Chapter 5 of the Code. | _____ Yes<br>__X__ No | N/A |

| | | |
|---|---|---|
| (2) Provisions that grant cross-collateralization protection to the prepetition secured creditor (i.e., clauses that secure prepetition debt with categories of collateral that were not covered by the secured party's lien prepetition) other than liens granted solely as adequate protection against diminution in value of a prepetition creditor's collateral. | _____ Yes<br><br>__X__ No | N/A |
| (3) Provisions that establish a procedure or conditions for relief from the automatic stay. | _____ Yes<br><br>__X__ No | N/A |
| (4) Provisions regarding the validity or perfection of a secured creditor's prepetition liens or that release claims against a secured creditor. | _____ Yes<br><br>__X__ No | N/A |
| (5) Provisions that prime any lien without that lienholder's consent. | _____ Yes<br><br>__X__ No | N/A |
| (6) Provisions that relate to a sale of substantially all of the debtor's assets. | _____ Yes<br><br>__X__ No | N/A |
| (7) Provisions for the payment of professional fees of the debtor or any committees, including any carve-outs for such payments. | __X__ Yes<br><br>_____ No | Page 3, ¶ 5 |
| (8) Provisions for the payment of prepetition debt. | _____ Yes<br><br>__X__ No | N/A |
| (9) Provisions that waive the debtor's exclusive right to file or solicit acceptances of a plan during the time periods specified in 11 U.S.C. § 1121. | _____ Yes<br><br>__X__ No | N/A |

| | | |
|---|---|---|
| (10) Provisions that require the debtor's plan to be on terms acceptable to the secured creditor. | _____ Yes<br><br>__X__ No | N/A |
| (11) Provisions that require or prohibit specific terms in the debtor's plan. | _____ Yes<br><br>__X__ No | N/A |
| (12) Provisions establishing that proposing a plan inconsistent with the order constitutes a default. | _____ Yes<br><br>__X__ No | N/A |
| (13) Provisions that waive surcharge under 11 U.S.C. § 506(c). | _____ Yes<br><br>__X__ No | N/A |
| (14) Provisions that address the rights and obligations of guarantors or co-obligors. | _____ Yes<br><br>__X__ No | N/A |
| (15) Provisions that prohibit the debtor from seeking approval to use cash collateral without the secured creditor's consent. | _____ Yes<br><br>__X__ No | N/A |
| (16) Provisions that purport to bind a subsequent trustee. | _____ Yes<br><br>__X__ No | N/A |
| (17) Provisions that obligate the debtor to pay any of a secured creditor's professional fees. | _____ Yes<br><br>__X__ No | N/A |

Date: October 5, 2026

*/s/ Ethan D. Dunn*
Ethan D. Dunn (P69665),

Maxwell Dunn, PLLC
Proposed Counsel for Debtor

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In the Matter of: | In Bankruptcy: |
| **Winters Cleaning Services, LLC,** | Case No. 26-50838-mlo<br>Chapter 11 (Subchapter V)<br>Hon. Maria L. Oxholm |
| Debtor. | |

**DEBTOR WINTERS CLEANING SERVICES, LLC'S FIRST DAY MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTOR TO USE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (II) GRANTING ADEQUATE PROTECTION TO PRE-PETITION SECURED PARTIES PURSUANT TO 11 U.S.C. §§ 361 AND 363, AND (III) SCHEDULING FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(b)**

NOW COMES Winters Cleaning Services, LLC, Debtor ("Winters Cleaning" or "Debtor"), by its proposed attorneys Maxwell Dunn, PLLC, and for its First Day Motion states as follows:

1. Pursuant to 11 U.S.C. §§ 105(a), 361, 362 and 363, Fed. R. Bankr. P. 2002, 4001, 9013 and 9014, and E.D. Mich. LBR 4001-2, 9013-1 and 9014-1, Debtor seeks entry of an interim order (the "Interim Order") and a final order (the "Final Order") authorizing Debtor to use cash collateral, granting adequate protection to pre-petition secured parties, and scheduling a final hearing. This is a First Day Motion under E.D. Mich. LBR 9001-1(b) and 9013-1.

2. Debtor does not concede that any party has a perfected security interest in cash collateral, or that any of the merchant cash advance agreements described below is a true sale of receivables. However, for purposes of this Motion and the interim hearing only, Debtor will presume that the following parties may hold an interest in Debtor's cash and accounts receivable: (a) EBF Holdings, LLC d/b/a Everest Business Funding ("Everest"); (b) On Deck Capital, Inc. ("OnDeck"); (c) Revenued, LLC ("Revenued"); and (d) WebBank and Intuit Financing Inc. d/b/a QuickBooks Capital ("QuickBooks Capital") (collectively, the "Cash Collateral Creditors").

3. In support of this Motion, Debtor relies on the Declaration of Michael W. Winters II in Support of Chapter 11 Petition and First Day Motions, attached as Exhibit 5 (the "Winters Declaration").

**BACKGROUND**

4. On October 1, 2026 (the "Petition Date"), Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code and elected to proceed under subchapter V. Debtor continues to operate its business and manage its property as a debtor in possession pursuant to §§ 1182(2) and 1184. A Subchapter V Trustee has not yet been appointed.

5. Winters Cleaning is a Michigan limited liability company based in Canton, Michigan, owned and managed by Michael W. Winters II. It provides commercial janitorial services to business customers, including national facilities-services companies.

Debtor has no employees. It performs its contracts through independent subcontractor cleaning companies, which it pays twice monthly, timed to its customers' payments.

6. Debtor began experiencing financial trouble after it lost a significant account and several customers began paying slowly. Annual revenue declined from approximately $2.2 million to roughly $1.65 million. Over the twelve months before the Petition Date, collections from Debtor's three principal customers averaged approximately $139,000 per month, and subcontractor costs consumed approximately 90% of those collections.

7. To bridge the gap, Debtor entered into merchant cash advance agreements that withdrew daily or weekly ACH payments from its operating account. From January through July 2026, those withdrawals averaged approximately $29,900 per month, and Debtor took new advances of $23,000 to $43,000 in most months to keep making them. Debtor's operating account was overdrawn repeatedly from May through September 2026 and held a combined negative balance of $3,873.40 on the Petition Date.

8. Before the Petition Date, at least one of the Cash Collateral Creditors sent notices to Debtor's customers directing them to pay the funder instead of Debtor. Debtor filed this case to stop the withdrawals, preserve its customer relationships, and reorganize.

## THE CASH COLLATERAL CREDITORS AND THE COLLATERAL

9. The Cash Collateral Creditors and any other creditor claiming an interest in cash collateral will need to make a prima facie showing of a perfected lien in its favor on Debtor's cash and accounts receivable as of the commencement of this chapter 11 case. Based on Debtor's records, the Cash Collateral Creditors assert the following approximate balances:

(a) Everest (Deal #233002): $122,444.40;

(b) OnDeck: $121,656.01;

(c) Revenued: $51,000.00; and

(d) QuickBooks Capital: $12,219.00,

for a combined asserted total of approximately $307,319.41.

10. Each merchant cash advance agreement is styled as a purchase of future receivables. Debtor disputes that characterization and contends that one or more of the agreements is a loan in substance, given the fixed payment amounts, the funder's recourse against Debtor and its principal, and the absence of any real risk of loss to the funder. Any Cash Collateral Creditor that claims the receivables were sold, and are not property of the estate, bears the burden of proof on the validity, priority and extent of that interest. 11 U.S.C. § 363(p)(2).

11. Nothing in this Motion, the Interim Order or the Final Order is an admission or stipulation that any Cash Collateral Creditor holds a valid claim or lien, that

any agreement is a true sale, or as to the amount of any claim. Debtor, the subchapter V trustee and all parties in interest reserve all rights to challenge the validity, priority, extent, perfection and enforceability of any claim or interest, including by recharacterization, usury, and avoidance claims under chapter 5 of the Bankruptcy Code.

12. The cash collateral consists of Debtor's cash and accounts receivable and their proceeds (the "Collateral"). On the Petition Date, Debtor's bank accounts held a combined negative balance of $3,873.40, and its accounts receivable totaled approximately $49,000.00 Debtor's other assets, consisting of a trailer, floor scrubbers and vacuums, have an estimated value of $24,000.00.

13. Pursuant to E.D. Mich. LBR 4001-2(a), Debtor states its position on the value of each secured interest to be protected as follows. The value of each Cash Collateral Creditor's secured interest is no greater than its share of the Collateral, in order of priority, and in no event more than approximately $24,000.00 in the aggregate. Because the combined asserted claims of approximately $307,319.41 exceed the value of the Collateral, any Cash Collateral Creditor holding a valid and perfected interest is undersecured, and the most junior are wholly unsecured. A Cash Collateral Creditor that did not perfect its interest before the Petition Date holds no secured interest, and the value of its secured interest is $0.

14. Debtor's projections are set forth in the 13-week budget attached as Exhibit 6 (the "Budget"). Summarized as required by E.D. Mich. LBR 4001-2(a), the Budget

projects receipts of $422,700 and disbursements of $405,650 for the thirteen weeks ending January 1, 2027, with ending cash of approximately $13,200 and a projected low point of approximately $1,900 in the week ending October 30, 2026. The Budget excludes all payments on pre-petition debt and all personal obligations of Debtor's principal.

**RELIEF REQUESTED**

15. Pursuant to § 363(c)(2) of the Bankruptcy Code, Debtor requests that this Court authorize and approve Debtor's use of cash collateral for the payment of Debtor's operating expenses as set forth in the Budget, including payments to subcontractors for post-petition services, supplies, insurance, vehicle upkeep, telephone and software, the $5,000 monthly Carve-Out deposit, and compensation to Debtor's principal of $5,000 per month.

16. On an interim basis, Debtor requests authority to use cash collateral in an amount not to exceed $135,095.00 in the aggregate, which is the amount of disbursements in the Budget for the four weeks ending October 30, 2026 and is the amount necessary to avoid immediate and irreparable harm pending a final hearing. Debtor may exceed any Budget line item by up to 15%, so long as aggregate disbursements do not exceed that amount.

17. Debtor further requests a carve-out from the replacement liens for allowed administrative expense claims of the subchapter V trustee and of professionals employed by Debtor, in the amount of $5,000.00 per month (the "Carve-Out"). Each month Debtor

will deposit $5,000.00 into a segregated debtor-in-possession administrative expense account, as shown in the Budget. Funds in that account will be disbursed only as authorized by order of this Court and will be free of the replacement liens and any interest of the Cash Collateral Creditors. Unused Carve-Out funds will carry forward.

## BASIS FOR RELIEF

18. 11 U.S.C. § 363(c)(2) governs the Court's approval of the use of cash collateral and provides that a debtor "may not use, sell, or lease cash collateral . . . unless (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). Section 363(e) provides that upon request of an entity that has an interest in property to be used by a debtor, the court shall prohibit or condition such use as is necessary to provide adequate protection of such interest. 11 U.S.C. § 363(e).

19. A debtor has the burden to establish that the holder of a lien whose cash collateral will be used has adequate protection. 11 U.S.C. § 363(p)(1). Adequate protection must be determined on a case-by-case basis, permitting a debtor maximum flexibility in structuring its adequate protection proposal. *See In re Martin*, 761 F.2d 472, 474 (8th Cir. 1985); *In re George Ruggiere Chrysler-Plymouth, Inc.*, 727 F.2d 1017, 1019 (11th Cir. 1984). Nonetheless, "a debtor, attempting to reorganize a business under Chapter 11, clearly has a compelling need to use 'cash collateral' in its effort to rebuild." *Id.*, 727 F.2d at 1019.

Adequate protection guards against a decline in the value of the collateral. *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 370–73 (1988).

20. Debtor needs immediate authority to use cash collateral to fund its day-to-day operations and ultimately achieve a successful reorganization. Specifically, Debtor requires the use of cash collateral for the payment of the operating expenses included in the Budget. These expenses are reasonable and necessary business expenses that must be paid in order to maintain and preserve Debtor's assets and to continue the operation of its business. Debtor has no present alternative borrowing source from which it can obtain additional funding. The failure to obtain authorization for the use of cash collateral would be fatal to Debtor and disastrous to its creditors, both secured and unsecured, as well as to Debtor's customers, who depend on uninterrupted cleaning services at their facilities.

**ADEQUATE PROTECTION**

21. As adequate protection, Debtor proposes to grant each Cash Collateral Creditor a replacement security interest under § 361(2) of the Bankruptcy Code, to the extent that the Cash Collateral Creditor is already perfected by a pre-petition security interest, (i) to the extent the Cash Collateral Creditor's cash collateral is used by Debtor, and (ii) to the same extent, validity and priority in Debtor's post-petition accounts receivable and proceeds thereof that the Cash Collateral Creditor holds in Debtor's pre-petition Collateral. Each replacement lien will secure only the amount by which the Cash Collateral Creditor's interest declines in value after the Petition Date.

22. The replacement liens shall be deemed perfected automatically upon entry of the Interim Order, without prejudice to any claim that a Cash Collateral Creditor was not perfected in the Collateral on the Petition Date.

23. Continued operation preserves the value of any Cash Collateral Creditor's interest. Debtor's receivables turn over approximately monthly: its largest customer pays twice a month, and its second-largest customer pays monthly. Each month's collections are replaced by new receivables generated from work performed with the cash. Without that cash, Debtor's subcontractors will stop working, customers will terminate their contracts, and the receivables base will collapse.

24. Debtor will serve its monthly operating reports and a monthly Budget-to-actual report on each Cash Collateral Creditor, the United States Trustee and the subchapter V trustee. Debtor will make no payments to the Cash Collateral Creditors during the interim period. The replacement liens will be subject and subordinate to the Carve-Out.

25. Pursuant to Fed. R. Bankr. P. 4001(b)(1)(B) and E.D. Mich. LBR 4001-2, Debtor states that the proposed Interim Order does not contain any cross-collateralization, roll-up of pre-petition debt, waiver of rights under § 506(c) or § 552(b), lien on chapter 5 claims or their proceeds, findings binding the estate as to the validity of any lien, or relief from the automatic stay upon default.

26. In the event that this Court does not authorize Debtor's use of cash collateral, Debtor believes that it will be unable to maintain its current business operations and propose a successful plan of reorganization. Debtor believes that the proposed adequate protection is fair and reasonable and sufficient to satisfy any diminution in value of the Collateral.

**INTERIM HEARING AND FINAL HEARING**

27. Rule 4001(b) of the Federal Rules of Bankruptcy Procedure provides that a final hearing (the "Final Hearing") on a motion to use cash collateral pursuant to § 363 may not be commenced earlier than fourteen (14) days after the service of such motion. Upon request, however, the court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.

28. Debtor requests that the Court conduct an expedited preliminary hearing on this Motion (the "Interim Hearing"). Pursuant to E.D. Mich. LBR 9013-1(c), Debtor is not filing a separate motion for an expedited hearing and is submitting a proposed order scheduling this First Day Motion for hearing, with the hearing date and time left blank.

29. Debtor has an urgent and immediate need for cash to continue to operate. Its next subcontractor payment, approximately $85,000, falls due in the week of October 19, 2026, followed by approximately $33,000 on October 30, 2026. Debtor will be

immediately and irreparably harmed absent authorization to use cash collateral on an interim basis pending a Final Hearing.

30. In compliance with E.D. Mich. LBR 4001-2(c)(2)–(6) and (d), the proposed Interim Order, attached as Exhibit 1: (a) authorizes use of cash collateral in a maximum amount of $135,095.00, only until the earlier of the date of the Final Hearing or the date the Interim Order becomes a final order; (b) provides for a Final Hearing, the date and time for which will be filled in by the Court; (c) requires Debtor to serve a copy of this Motion, with its attachments, and the entered Interim Order within 24 hours of its entry on all parties required to be served under Fed. R. Bankr. P. 4001(d); (d) provides that the deadline to file an objection to the Interim Order is 14 days from its entry, that the Final Hearing will be held if an objection is timely filed, and that the Interim Order may become a final order if no objection is timely filed; and (e) is supported by the Winters Declaration, which states the facts upon which Debtor relies and the amount of money needed to avoid immediate and irreparable harm.

31. As required by E.D. Mich. LBR 4001-2(b), this Motion is filed with a completed Cover Sheet for Motion to Use Cash Collateral or to Obtain Financing.

## NOTICE AND CONCURRENCE

32. Pursuant to E.D. Mich. LBR 9013-1(b), within 24 hours after filing, Debtor will serve this Motion and all related papers by ECF, email, overnight delivery or facsimile, as available, on (1) the Office of the United States Trustee; (2) the subchapter V

trustee; (3) each Cash Collateral Creditor and any other secured creditor, at the notice address in its agreement and at any address listed on a UCC financing statement; (4) the creditors on the list filed under Fed. R. Bankr. P. 1007(d); and (5) any other adverse party. Debtor will file a certificate of service and will notify the courtroom deputy that First Day Motions have been filed.

33. Pursuant to E.D. Mich. LBR 9014-1(h), Debtor sought the concurrence of the Cash Collateral Creditors in the relief requested on October 5, 2026, by email

, and concurrence was not received as of the filing of this Motion.

WHEREFORE, Debtor respectfully requests that the Court enter an Interim Order substantially similar to the order attached hereto as Exhibit 1, schedule a Final Hearing, enter a Final Order following the Final Hearing, and grant such further relief as this Court may deem just and proper.

Respectfully submitted,

MAXWELL DUNN, PLLC

*/s/ Ethan D. Dunn*
Ethan D. Dunn (P69665)
2937 E. Grand Boulevard, Suite 308
Detroit, MI 48202
(248) 246-1166
edunn@maxwelldunnlaw.com
Proposed Counsel for Debtor,
Winters Cleaning Services, LLC

Dated: October 5, 2026

**EXHIBITS TO FIRST DAY MOTION**

(E.D. Mich. LBR 9014-1(c))

| | |
|---|---|
| Exhibit 1 | Proposed Interim Order (First Day Motion) |
| Exhibit 2 | Notice of Motion and Opportunity to Object |
| Exhibit 3 | Brief (not required under LBR 9014-1(f)) |
| Exhibit 4 | Certificate of Service |
| Exhibit 5 | Declaration of Michael W. Winters II in Support of Chapter 11 Petition and First Day Motions |
| Exhibit 6 | Thirteen-Week Budget (First Day Motion) |

**First Day Motion — Exhibit 1**
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In the Matter of: | In Bankruptcy: |
| **Winters Cleaning Services, LLC,** | Case No. 26-50838-mlo<br>Chapter 11 (Subchapter V)<br>Hon. Maria L. Oxholm |
| Debtor. | |

**FIRST DAY INTERIM ORDER (I) AUTHORIZING DEBTOR TO USE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (II) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361 AND 363, AND (III) SCHEDULING FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(b)**

This matter came before the Court on the First Day Motion of Winters Cleaning Services, LLC (the "Debtor") for Interim and Final Orders (I) Authorizing Debtor to Use Cash Collateral, (II) Granting Adequate Protection, and (III) Scheduling a Final Hearing (the "Motion") (Docket # _____) Capitalized terms not defined in this Order have the meanings given in the Motion. The Court held an interim hearing on the Motion on October ________, 2026 (the "Interim Hearing"), at which the Cash Collateral Creditors were given an opportunity to be heard. The Court has reviewed the Motion, the Declaration of Michael W. Winters II, and the budget attached to this Order as Exhibit A (the "Budget"), and has heard the statements of counsel. Based on the record, the Court FINDS:

A. On October 1, 2026 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code and elected to proceed under subchapter V. The Debtor continues to operate its business as a debtor in possession under 11 U.S.C. §§ 1182(2) and 1184.

B. The Court has jurisdiction over the Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (M).

C. Notice of the Motion and the Interim Hearing was given in the manner required by Fed. R. Bankr. P. 4001(b) and E.D. Mich. LBR 9013-1 and 4001-2(d)(1), and is sufficient under the circumstances.

D. The parties that may assert an interest in the Debtor's cash and accounts receivable are EBF Holdings, LLC d/b/a Everest Business Funding, On Deck Capital, Inc., Revenued, LLC, and WebBank and Intuit Financing Inc. d/b/a QuickBooks Capital (collectively, the "Cash Collateral Creditors"). None of the Cash Collateral Creditors has consented to the relief granted in this Order.

E. The Debtor has an immediate need to use cash collateral to pay its subcontractors and other operating expenses. Without the use of cash collateral in the amount authorized by this Order, the Debtor's estate will suffer immediate and irreparable harm pending a final hearing.

F. Under E.D. Mich. LBR 4001-2(d)(4), the Court specifically finds that the adequate protection provided in this Order to the non-consenting Cash Collateral Creditors is adequate, and that adequate protection is incorporated into this Order.

Based on these findings, IT IS ORDERED:

1. The Motion is GRANTED on an interim basis as set forth in this Order.

2. **Authorized use.** The Debtor is authorized to use cash collateral to pay the expenses set forth in the Budget, in a maximum aggregate amount not to exceed $135,095.00, from the Petition Date only until the earlier of (a) the date of the Final Hearing set in paragraph 13, or (b) the date this Order becomes a final order under paragraph 12. The Debtor may exceed any line item in the Budget by up to 15%, provided that aggregate disbursements do not exceed $135,095.00.

3. **Replacement liens.** As adequate protection under 11 U.S.C. §§ 361(2) and 363(e), each Cash Collateral Creditor that held a valid, perfected and unavoidable security interest in the Debtor's cash or accounts receivable on the Petition Date is granted a replacement lien on the Debtor's post-petition accounts receivable and their proceeds, to the same extent, validity and priority as its pre-petition interest. Each replacement lien secures only the amount by which the Cash Collateral Creditor's interest in cash collateral declines in value after the Petition Date as a result of the Debtor's use of cash collateral.

4. The replacement liens are deemed valid and perfected upon entry of this Order, without the need to file or record any financing statement or other document. The replacement liens do not attach to any claim or cause of action of the estate under chapter 5 of the Bankruptcy Code or to the proceeds of any such claim or cause of action.

5. **Carve-out.** The replacement liens are subject and subordinate to a carve-out for allowed administrative expense claims of the subchapter V trustee and of professionals employed by the Debtor, in the amount of $5,000.00 per month (the "Carve-Out"). Each month, beginning in October 2026, the Debtor shall deposit $5,000.00 from cash collateral into a segregated debtor-in-possession administrative expense account, as provided in the Budget. Funds in that account are held for the payment of administrative expense claims allowed by the Court, may be disbursed only as authorized by order of the Court, and are free of the replacement liens and any lien or interest of the Cash Collateral Creditors. Unused Carve-Out funds carry forward to subsequent months.

6. **Reporting.** The Debtor shall serve its monthly operating reports, together with a report comparing actual receipts and disbursements to the Budget, on counsel for each Cash Collateral Creditor that has appeared in this case, the United States Trustee, and the subchapter V trustee, on or before the date the monthly operating report is due.

7. **No payments on pre-petition debt.** Nothing in this Order authorizes the Debtor to make any payment to a Cash Collateral Creditor, or any payment on account of a pre-petition claim.

8. **Reservation of rights.** Nothing in this Order is a finding or admission as to the validity, priority, extent, perfection or enforceability of any claim, lien or interest of any Cash Collateral Creditor, or that any agreement between the Debtor and a Cash Collateral Creditor is a sale of receivables. The Debtor, the subchapter V trustee, any subsequently appointed trustee and all parties in interest retain all rights to challenge any such claim, lien or interest, including by recharacterization, usury, and avoidance claims under chapter 5 of the Bankruptcy Code. Each Cash Collateral Creditor retains its right to object to this Order as provided in paragraph 11 and E.D. Mich. LBR 4001-2(e).

9. **Termination.** The Debtor's authority to use cash collateral under this Order terminates upon the earliest of (a) dismissal or conversion of this case, (b) removal of the Debtor as debtor in possession under 11 U.S.C. § 1185, or (c) further order of the Court.

10. **Service.** Within 24 hours after entry of this Order, the Debtor shall serve a copy of the Motion, with its attachments, and this Order on all parties required to be served under Fed. R. Bankr. P. 4001(d), and shall promptly file a certificate of service.

11. **Objections.** The deadline to file an objection to this Order is 14 days after its entry, except that an official committee, if one is appointed, may file an objection within 14 days after it is served with this Order. Objections must be filed with the Court and served on counsel for the Debtor.

12. If an objection is timely filed, the Final Hearing will be held as set forth in paragraph 13. If no objection is timely filed, this Order may become a final order without a further hearing.

13. **Final Hearing.** A final hearing on the Motion (the "Final Hearing") will be held on ______________, 2026, at ______ __.m., before the Honorable Maria L. Oxholm, United States Bankruptcy Court, 211 West Fort Street, Courtroom ____, Detroit, Michigan 48226

14. This Order is effective immediately upon entry.

*Exhibit A to Order: Thirteen-Week Budget (First Day Motion).*

**EXHIBIT 2**

Revised 12/1/2016

**UNITED STATES BANKRUPTCY COURT**
**Eastern District of Michigan**

**In re:**

*WINTERS CLEANING SERVICES, LLC*

**Debtor(s)**

**Chapter: 11 (Subchapter V)**

**Case No.: 26-50838-mlo**

**Judge: Hon. Maria L. Oxholm**

Address 7970 N. Lilley Road
Canton, Michigan 48187

Last four digits of Social Security or
Employer's Tax Identification (EIN) No(s).(if any): [xx-xxx3836

**NOTICE OF FIRST DAY MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING USE OF CASH COLLATERAL**

Winters Cleaning Services, LLC, Debtor, has filed papers with the court to use cash collateral, grant adequate protection to pre-petition secured parties, and schedule a final hearing (First Day Motion).

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

If you do not want the court to authorize the Debtor to use cash collateral and grant the other relief requested in the motion, or if you want the court to consider your views on the motion, within 14 days, you or your attorney must:

1. File with the court a written response or an answer, explaining your position at:[1]

**United States Bankruptcy Court**
211 West Fort Street
Detroit, Michigan 48226

If you mail your response to the court for filing, you must mail it early enough so the court will **receive** it on or before the date stated above. All attorneys are required to file pleadings electronically.

You must also send a copy to:

Ethan D. Dunn (P69665), Maxwell Dunn, PLLC, 2937 E. Grand Boulevard, Suite 308, Detroit, MI 48202, (248) 246-1166, edunn@maxwelldunnlaw.com

Office of the United States Trustee, 211 West Fort Street, Suite 700, Detroit, MI 48226; and [Subchapter V Trustee name and address]

2. If a response or answer is timely filed and served, the clerk will schedule a hearing on the motion and you will be served with a notice of the date, time and location of the hearing.

1 1Response or answer must comply with F. R. Civ. P. 8(b), (c) and (e)

**If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.**

Date: October 5 , 2026____________________

Signature /s/ Ethan D. Dunn
Name Ethan D. Dunn (P69665)
Maxwell Dunn, PLLC
Proposed Counsel for Debtor
Address 2937 E. Grand Blvd., Suite 308
Detroit, MI 48202
(248) 246-1166

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In the Matter of: | In Bankruptcy: |
| **Winters Cleaning Services, LLC,** | Case No. 26-50838-mlo<br>Chapter 11 (Subchapter V)<br>Hon. Maria L. Oxholm |
| Debtor. | |

**SWORN STATEMENT OF MICHAEL W. WINTERS II**
**IN SUPPORT OF CHAPTER 11 PETITION**
**AND FIRST DAY MOTIONS**

Michael W. Winters II states as follows under penalty of perjury:

1. I am the sole member and manager of Winters Cleaning Services, LLC (the "Debtor"). I am over 18 years of age, and I am authorized to make this statement on the Debtor's behalf. Except where stated otherwise, the facts in this statement are based on my personal knowledge, my review of the Debtor's books, records and bank statements, and information provided to me by the Debtor's advisors. If called as a witness, I could testify competently to these facts.

2. I submit this sworn statement under 28 U.S.C. § 1746 in support of the Debtor's voluntary petition under chapter 11 of the Bankruptcy Code and the Debtor's First Day Motion for Interim and Final Orders (I) Authorizing Debtor to Use Cash Collateral, (II) Granting Adequate Protection, and (III) Scheduling Final Hearing (the

"Cash Collateral Motion"), and as required by E.D. Mich. LBR 4001-2(c)(6). Capitalized terms not defined here have the meanings given in the Cash Collateral Motion.

**THE DEBTOR AND ITS BUSINESS**

3. The Debtor is a Michigan limited liability company formed in 2013, with its principal place of business in Canton, Michigan. The Debtor provides commercial janitorial services to business customers, including national facilities-services companies. Its principal customers are GDI Omni, Inc., TRC, and Rozalado & Co.

4. The Debtor has no employees. It performs its customer contracts through independent subcontractor cleaning companies. The Debtor typically pays its subcontractors twice monthly, timed to its customers' payments.

5. The Debtor's business is growing. The Debtor expects to begin servicing approximately 100 bank branch locations in the Chicago area within the next two months.

**EVENTS LEADING TO THE CHAPTER 11 FILING**

6. The Debtor's financial difficulties began when it lost a significant account and several customers began paying slowly. Annual revenue declined from approximately $2.2 million to approximately $1.65 million.

7. To cover the gap, the Debtor entered into merchant cash advance and short-term financing agreements with On Deck Capital, Inc., EBF Holdings, LLC d/b/a Everest Business Funding, and Revenued, LLC, and took several loans from QuickBooks Capital. The merchant cash advance agreements withdrew daily or weekly ACH payments from

the Debtor's operating account. From January through July 2026, those withdrawals averaged approximately $29,900 per month, and the Debtor took new advances in most months to keep making them.

8. On or about September 24, 2026, one of the Debtor's customers told me it had received a notice from a funder directing the customer to pay the funder instead of the Debtor. If customers redirect their payments, the Debtor cannot pay its subcontractors, and its business will stop.

9. On the Petition Date, the Debtor's operating account at JPMorgan Chase Bank, N.A. had a negative balance of $3,875.40, and its second Chase account had a balance of $2.00. The Debtor filed this case on October 1, 2026 to stop the withdrawals, keep its customer relationships, and reorganize.

**THE CASH COLLATERAL CREDITORS**

10. Based on the Debtor's records, the Cash Collateral Creditors assert approximately the following balances: Everest, $122,444.40; OnDeck, $121,656.01; Revenued, $51,000.00; and QuickBooks Capital, $12,219.00. To my knowledge, no UCC financing statement was filed by Everest or OnDeck.

11. The Debtor's cash collateral consists of its cash and accounts receivable. As of the Petition Date, the Debtor's accounts receivable totaled approximately $49,000.00. The Debtor's other assets consist of a trailer, floor scrubbers, vacuums and similar cleaning equipment, with an estimated value of $24,000.00.

**THE BUDGET AND THE NEED FOR INTERIM RELIEF**

12. The Budget attached to the Cash Collateral Motion was prepared from the Debtor's bank statements for the twelve months before the Petition Date. I have reviewed it, and I believe it is a reasonable projection of the Debtor's receipts and disbursements for the next thirteen weeks. It projects receipts of approximately $140,900 per month from the Debtor's three principal customers.

13. The Budget includes only the Debtor's business expenses, a $5,000 monthly deposit to a segregated account for the Carve-Out for administrative expense claims, and compensation to me of $5,000 per month. It includes no payments to the Cash Collateral Creditors or on any other pre-petition debt.

14. The Debtor has an immediate need to use cash collateral. Its next subcontractor payment, approximately $85,000, falls due in the week of October 19, 2026, followed by approximately $33,000 on October 30, 2026. The Debtor also needs cash for supplies, insurance, vehicle upkeep, telephone and software, and the Carve-Out deposit.

15. If the Debtor cannot pay its subcontractors, they will stop performing, the Debtor's customers will terminate their contracts, and the Debtor's receivables, which are the Cash Collateral Creditors' collateral, will stop being replaced. The Debtor has no other source of funding.

16. The amount of cash collateral the Debtor needs to avoid immediate and irreparable harm before a final hearing is $135,095.00, which is the amount of disbursements in the Budget for the four weeks ending October 30, 2026.

17. The Debtor is opening debtor-in-possession accounts at The Huntington National Bank, will deposit all post-petition receipts into those accounts, and has revoked the ACH authorizations of the Cash Collateral Creditors pending closure of the pre-petition account.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 5, 2026, at Canton, Michigan.

/s/ _Michael W. Winters___________
Michael W. Winters II
Sole Member and Manager
Winters Cleaning Services, LLC

## EXHIBIT 6

**Winters Cleaning Services, LLC — First Day Motion — Exhibit 6: 13-Week Cash Collateral Budget (FINAL)**

*Case No. 26-50838-mlo · Weeks ending Friday, 10/9/2026 – 1/1/2027 · Prepared from Chase x8236/x6769 activity Sep 2025 – Sep 2026 · All amounts in $*

| | Wk 1 10/9/26 | Wk 2 10/16/26 | Wk 3 10/23/26 | Wk 4 10/30/26 | Wk 5 11/6/26 | Wk 6 11/13/26 | Wk 7 11/20/26 | Wk 8 11/27/26 | Wk 9 12/4/26 | Wk 10 12/11/26 | Wk 11 12/18/26 | Wk 12 12/25/26 | Wk 13 1/1/27 | 13-Week Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RECEIPTS** | | | | | | | | | | | | | | |
| GDI Omni Inc — early-month payment | $20,000 | - | - | - | $20,000 | - | - | - | $20,000 | - | - | - | - | $60,000 |
| GDI Omni Inc — mid-month payment | - | - | $80,000 | - | - | - | $80,000 | - | - | - | $80,000 | - | - | $240,000 |
| TRC — mid-month payments | - | - | $3,000 | - | - | - | $3,000 | - | - | - | $3,000 | - | - | $9,000 |
| TRC — late-month payment | - | - | - | $28,000 | - | - | - | $28,000 | - | - | - | $28,000 | - | $84,000 |
| Rozalado & Co | - | - | $9,900 | - | - | - | $9,900 | - | - | - | $9,900 | - | - | $29,700 |
| **Total receipts** | **$20,000** | **-** | **$92,900** | **$28,000** | **$20,000** | **-** | **$92,900** | **$28,000** | **$20,000** | **-** | **$92,900** | **$28,000** | **-** | **$422,700** |
| **DISBURSEMENTS** | | | | | | | | | | | | | | |
| Subcontractors — mid-month payment (postpetition work only) | - | - | $85,000 | - | - | - | $85,000 | - | - | - | $85,000 | - | - | $255,000 |
| Subcontractors — month-end payment | - | - | - | $33,000 | - | - | - | - | $33,000 | - | - | - | $33,000 | $99,000 |
| Hopson Management | - | - | $3,075 | - | - | - | $3,075 | - | - | - | $3,075 | - | - | $9,225 |
| Business insurance (Merchants Mutual, State Farm) | $375 | - | - | - | $375 | - | - | - | $375 | - | - | - | - | $1,125 |
| Phone, internet & software | $1,735 | - | - | - | $1,735 | - | - | - | $1,735 | - | - | - | - | $5,205 |
| Utilities — DTE commercial | $300 | - | - | - | $300 | - | - | - | $300 | - | - | - | - | $900 |
| Cleaning supplies & equipment | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $3,250 |
| Fuel, car wash & vehicle upkeep | $115 | $115 | $115 | $115 | $115 | $115 | $115 | $115 | $115 | $115 | $115 | $115 | $115 | $1,495 |
| Bank fees (DIP account) | $150 | - | - | - | $150 | - | - | - | $150 | - | - | - | - | $450 |
| Owner compensation — Michael W. Winters II (semi-monthly) | - | - | $2,500 | $2,500 | - | - | $2,500 | $2,500 | - | - | $2,500 | $2,500 | - | $15,000 |
| Administrative expense Carve-Out — deposit to segregated DIP admin | - | - | - | $5,000 | - | - | - | $5,000 | - | - | - | $5,000 | - | $15,000 |
| 0 | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 0 | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 0 | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total disbursements** | **$2,925** | **$365** | **$90,940** | **$40,865** | **$2,925** | **$365** | **$90,940** | **$7,865** | **$35,925** | **$365** | **$90,940** | **$7,865** | **$33,365** | **$405,650** |
| **Net cash flow** | **$17,075** | **($365)** | **$1,960** | **($12,865)** | **$17,075** | **($365)** | **$1,960** | **$20,135** | **($15,925)** | **($365)** | **$1,960** | **$20,135** | **($33,365)** | **$17,050** |
| Beginning cash | ($3,873) | $13,202 | $12,837 | $14,797 | $1,932 | $19,007 | $18,642 | $20,602 | $40,737 | $24,812 | $24,447 | $26,407 | $46,542 | |
| **Ending cash** | **$13,202** | **$12,837** | **$14,797** | **$1,932** | **$19,007** | **$18,642** | **$20,602** | **$40,737** | **$24,812** | **$24,447** | **$26,407** | **$46,542** | **$13,177** | |

| | |
|---|---|
| *Memo: lowest weekly ending cash* | *$1,932* |
| *Memo: subcontractors as % of receipts (13 wks)* | *83.7%* |
| *Memo: prepetition funder debits no longer paid (Jan–Jul 2026 avg, per r* | *$29,865* |

**Notes:**

1. Receipts are limited to identified customers (GDI Omni, TRC, Rozalado & Co). Unidentified branch deposits (~$5,200–$12,800/mo), card 'instant transfer' credits and the one-time $15,000 New Heaven Ministries wire (9/25) are excluded as upside until sources are confirmed.
2. Subcontractor payments are for postpetition services only. Whether the mid-October payment covers September (prepetition) work must be confirmed before filing.
3. Excludes all payments on prepetition debt (OnDeck, Everest/EBF, Revenued, QuickBooks Capital) and personal obligations previously paid from the operating account (residence mortgage, personal vehicle loans, personal credit cards, RAM Payments, Liberty Mutual, DTE Residential).
4. Yellow cells on the Assumptions sheet need confirmation from the client or counsel.